UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BARBARA D. O'DONNELL,

                Plaintiff,

    -against-

METROPOLITAN LIFE INSURANCE
COMPANY[1] and INTERNATIONAL
BUSINESS MACHINES CORP.,

                Defendants.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

08 Civ. 1117 (CS) (GAY)

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

On February 4, 2008, plaintiff Barbara D. O'Donnell commenced this *pro se* action seeking relief pursuant to the Employee Retirement Income Security Act of 1974, ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* Plaintiff alleges that defendants Metropolitan Life Insurance Company ("Metlife") and International Business Machines Corporation ("IBM") wrongfully terminated the long term disability benefits due to plaintiff under the terms of her employee insurance plan. Presently before this Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons that follow, I respectfully recommend that defendants' motion should be granted.

---

    [1] Erroneously pleaded as MetLife Disability Insurance Company. The caption has been amended to reflect the proper party name.

**I. FACTUAL ALLEGATIONS**

The Court accepts as true the following facts taken from the complaint.

While plaintiff was employed at IBM, she participated in the IBM Long-Term Disability Plan ("the LTD Plan") and purchased long-term disability insurance from Metlife via payroll deductions.  On or about November 29, 1994, plaintiff became disabled from work due to a back injury.  She subsequently submitted a claim for long-term disability benefits to Metlife, which Metlife approved in November 1995.

By letter dated July 12, 2000, Metlife notified plaintiff that she was no longer eligible for benefits under the LTD Plan and that her benefits would be terminated August 1, 2000.  Plaintiff contacted Metlife several times over the next few months and requested an appeal.  She submitted a letter to Metlife from Dr. Gerald Malanga, dated September 11, 2000, which stated that plaintiff was unable to work.  Metlife denied plaintiff's appeal.

By letter dated December 6, 2000, plaintiff requested assistance from Neil Levin, New York Insurance Commissioner.  By letter dated January 10, 2001, Mr. Levin informed plaintiff that his office could offer no assistance because the master contract was delivered in the state of Connecticut.  Plaintiff then requested assistance, via letter, from the State of Connecticut Insurance Commissioner.  By letter dated April 19, 2001, a claims examiner from the Connecticut Insurance Department informed plaintiff that her doctor must submit further evidence documenting plaintiff's physical limitations.

In July 2001, plaintiff called Christine D'Ippolito, a legal assistant at the Health

Care Bureau of the New York State Attorney General's Office. Ms. D'Ippolito suggested that Dr. Malanga submit a detailed letter explaining plaintiff's disability and why he believed Metlife should continue plaintiff's benefits. On August 8, 2001, Dr. Malanga wrote a letter to Ms. D'Ippolito which stated, among other things, that clear medical evidence supported his conclusion that plaintiff was unable to work due to chronic low back pain.

By letter dated August 21, 2001, Ms. D'Ippolito requested that Metlife reconsider its denial of plaintiff's benefits. Ms. D'Ippolito enclosed Dr. Malanga's letter and asked, if the denial was upheld, that Metlife provide a detailed response to the medical evidence. By letter to Ms. D'Ippolito dated September 21, 2001, Rhonda Austin, Unit Manager at Metlife, responded that Metlife was obtaining plaintiff's claims file from an offsite retention center. Ms. Austin stated that, upon receipt of the file, they would review the medical documentation and the concerns raised by Ms. D'Ippolito's letter, and would advise Ms. D'Ippolito of their findings.

On October 5, 2001, Ms. Austin sent a supplemental letter to Ms. D'Ippolito in which Metlife stated that their previous decision remained unchanged because medical evidence had not been provided to document the severity of the impairment noted by Dr. Malanga. Metlife also stated that they would reevaluate the medical evidence upon receipt of the requested information and advise plaintiff of their findings. Plaintiff submitted additional medical records to Metlife on October 26, 2001.

On October 30, 2001, Ms. Austin informed plaintiff that Metlife completed review

3

of her claim and upheld their original denial of benefits, that her claim had received the full and fair review required by the plan and federal law, and that no further review or appeal of the denial of plaintiff's benefits would be considered. Metlife reiterated said information in a letter to plaintiff dated February 4, 2002.

## I.  RULE 12(b)(6) STANDARD OF REVIEW

In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). Further, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). *Pro se* complaints and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." See Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quotation and citation omitted). Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

For purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to

include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Id. at 153 (quotation and citation omitted).

## II.  APPLICABLE STATUTE OF LIMITATIONS

Because ERISA contains no statute of limitations, courts in this circuit generally apply the most nearly analogous state statute of limitations. See Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan, 698 F.2d 593, 598 (2d Cir. 1983) (citing Board of Regents v. Tomanio, 446 U.S. 478, 483-84 (1980)).  Under New York law, the six-year limitations period applicable to breach of contract actions governs ERISA claims for recovery of benefits due to a beneficiary. See Miles, 698 F.2d at 598.  In New York, however, a shorter limitations period will control if one is "prescribed by written agreement." N.Y. C.P.L.R. § 201.  The term "written agreement" encompasses "employee welfare benefit plans governed by ERISA." See Shore v. Painewebber Long Term Disability Plan, No. 04 Civ. 4152 (KMK), 2007 WL 3047113, at *8 (S.D.N.Y. Oct. 15, 2007).

Defendants contend that a two-year limitations period governs the instant action,

pursuant to a provision contained within the employee benefit plan.[2]  Plaintiff counters that the language in the benefit plan prescribing the limitations period is ambiguous and that the limitations period, as written, does not apply to her particular cause of action.  Thus, plaintiff argues that instant action should be governed by a six-year statute of limitations.  The Court need not resolve the issue because even assuming, *arguendo*, that the six-year statute of limitations is the appropriate limitations period for this action, plaintiff's claim is nonetheless time-barred..

### III.  ACCRUAL OF PLAINTIFF'S ACTION

"[A] plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y]."  Hirt v. Equitable Ret. Plan for Employees, Managers and Agents, 285 F. App'x 802, 804 (2d Cir. 2008) (quotation and citation omitted) (emphasis in original).  In other words, an ERISA cause of action accrues when the plaintiff is "unequivocally notified that his or her claim for benefits has been denied."  See Yuhas v. Provident Life and Cas. Ins. Co., 162 F. Supp.2d 227, 231-32 (S.D.N.Y. 2001).

Defendants contend that plaintiff's action accrued on July 12, 2000, when Metlife first notified her that she was no longer eligible for benefits under the LTD Plan.  Plaintiff

---

[2]  Defendants have provided a copy of the Summary Plan Description of the LTD Plan in support of their motion to dismiss.  Although the LTD Plan is not attached to the complaint, it is clearly integral to plaintiff's claims and, thus, may be considered as part of the instant record.

argues that her cause of action accrued on February 4, 2002, upon completion of the appeal process and receipt of Metlife's final correspondence regarding its termination of benefits.  There is some discord throughout the Second Circuit as to whether an ERISA claim accrues at the first denial of benefits or after the appeals process is completed.  See Burke v. Price, Waterhouse, Coopers LLP Long Term Disability Plan, 537 F. Supp. 2d 546, 549 (S.D.N.Y. 2008).  However, even applying the more permissive rule, plaintiff's filing is untimely.

      Plaintiff admits that she was notified on October 30, 2001 that Metlife completed review of her claim and upheld their original denial of benefits, that her claim had received the full and fair review required by the plan and federal law, and that no further review or appeal of the denial of plaintiff's benefits would be considered.  This language communicated to plaintiff that her claim was clearly and unequivocally denied.  See Yuhas, 162 F. Supp.2d at 232 (holding that "the ERISA Appeals Committee has reaffirmed the denial of you LTD claim" and "no further consideration of plaintiff's claim will be extended in accordance with ERISA regulations" constituted clear and unequivocal notification of denial of benefits).  The fact that Metlife reiterated said information in a subsequent letter does not negate the notice previously given.  In her response to the instant motion, plaintiff argues that Metlife continued to review her medical records through at least January 26, 2002 and attaches a copy of Metlife's Daily Review-Report in support of her contention.  Putting aside the question of whether or not said evidence may be considered in conjunction with the instant motion, Metlife's

alleged willingness to continue review of plaintiff's claim did not mark continuation of the appeals process, nor did it make its previous notice of termination "any less final." See Roberts v. Metropolitan Life Ins. Co., No. 06 Civ. 2725 (CM), 2007 WL 900920, at *4 (S.D.N.Y. Mar. 26, 2007).  Thus, plaintiff's claim accrued, at the latest, on October 30, 2001; the statute of limitations therefore expired–at the latest–on or about October 30, 2007.  Plaintiff, however, did not file the instant complaint until February 4, 2008.  Accordingly, I conclude, and respectfully recommend, that plaintiff's claim is time-barred.

## III.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that defendants' motion to dismiss should be granted.

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended by Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States District Court, Southern District of New

York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

Dated: February 20, 2009
       White Plains, New York

Respectfully Submitted:

_____
GEORGE A. YANTHIS, U.S.M.J.